IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SIXTH ANGEL SHEPHERD RESCUE INC., et al., | : : | |
| Plaintiffs, | : : | CIVIL ACTION |
| v. | : : | |
| PENNSYLVANIA SPCA, et al., | : | No. 10-3101 |
| Defendants. | : | |

## MEMORANDUM

Schiller, J.                                                                           February 15, 2011

Dog rescue organization Sixth Angel alleges that state and local officials have harassed its members since seizing three of its dogs. Sixth Angel's Second Amended Complaint references numerous causes of action, including facial and as-applied challenges to the Pennsylvania Dog Law, federal civil rights claims, and state law tort claims. All Defendants have filed motions to dismiss. For the reasons that follow, the Court will grant these motions in part and deny them in part.

## I.    BACKGROUND

Sixth Angel is a rescue network kennel licensed in Pennsylvania. (Second Am. Compl. ¶ 1.) The organization rescues dogs from southern animal shelters and transports them north for adoption. (*Id*. ¶ 26.) On the evening of April 10, 2010, in a McDonald's parking lot in Marcus Hook, Pennsylvania, volunteers from Sixth Angel and other dog rescue groups waited for a van of dogs rescued from North Carolina animal shelters. (*Id*. ¶¶ 38-39.) The van arrived around 9:00 p.m. (*Id*. ¶ 38.) Joseph Loughlin, a dog warden from the Pennsylvania Dog Law Enforcement Bureau ("Dog Law Bureau"), appeared with officials from the Pennsylvania Society for the Prevention of Cruelty to Animals ("PSPCA") just as the dogs were changing hands. (*Id*. ¶¶ 40, 235.)

Loughlin seized transport documents from the van's driver, Ann Marie Wessel. (*Id.* ¶¶ 38, 40.) He also took the volunteers' car keys, told them they could not leave, and said he would cite them for violations of the Pennsylvania Dog Law, a statutory scheme regulating dog kennels and the sale and transport of dogs. (*Id.* ¶ 40; *see also* 3 Pa. Cons. Stat. § 459-101.) He did not advise anyone of their *Miranda* rights or produce a warrant. (Second Am. Compl. ¶ 43.) Meanwhile, a PSPCA official threatened Silva with a citation under the Pennsylvania Dog Law for using an unlicensed transporter, as Wessel had applied for — but had not obtained — a Pennsylvania out-of-state dealer license. (*Id.* ¶ 52.)

Sixth Angel suggests this comment referred to a provision of the Pennsylvania Dog Law, 3 Pa. Cons. Stat. § 459-209(b). Section 459-209(b) states that it is unlawful for licensed Pennsylvania kennels "to knowingly accept, receive, buy, barter or exchange a dog with an unlicensed out-of-state dealer for resale." The consequences of violating this provision include civil and criminal penalties. (Second Am. Compl. ¶¶ 52, 164; *see also* 3 P.S. §§ 459-209, 459-903.)

Loughlin and the PSPCA officials told the dog rescue volunteers to remove the dogs from the van. (Second Am. Compl. ¶ 41.) They inspected the vehicle and questioned Wessel. (*Id.* ¶¶ 40-42.) The PSPCA then took custody of the dogs and refused to release them until they had been examined by a veterinarian. (*Id.* ¶¶ 41-42, 48.) A PSPCA official also threatened to cite Silva, claiming she violated the law by allowing the dogs to travel on Wessel's van. (*Id.* ¶ 54.) Silva received no citations that night and left the scene around 1:30 a.m. after Loughlin assured her she could retrieve Sixth Angel's dogs within a few days. (*Id.* ¶ 48.)

A second rescue organization with dogs on Wessel's van, Thunders Angels, received a citation and retrieved its dogs on April 11, 2010. (*Id.* ¶ 127.) The PSPCA did not, however, return

Sixth Angel's dogs. Sixth Angel sent the PSPCA documents reflecting its ownership of the dogs on April 12 and April 13, 2010. (*Id*. ¶ 224.) Nevertheless, the PSPCA informed Sixth Angel that it would put its dogs up for adoption rather than return them. (*Id*. ¶ 60.) Sixth Angel and Silva filed a lawsuit in this Court on April 16, 2010, alleging that the PSPCA's retention of the dogs was unconstitutional and constituted conversion. *Sixth Angel Shepherd Rescue, Inc. v. Bengal, et al.*, Civ. A. No. 10-1733, 2010 WL 2164521, at *1 (E.D. Pa. May 27, 2010). Sixth Angel established ownership of the dogs and the Court ordered their return. *Id*. at *4-5. The case is stayed pending the PSPCA's appeal.

Loughlin mailed Silva a citation for violating the Pennsylvania Dog Law by paying for the transfer of dogs. (Second Am. Compl. ¶ 62.) Sixth Angel asserts that Silva was cited after she threatened to file a lawsuit; according to Sixth Angel, Loughlin told her to expect a citation in the mail "because of how you have chosen to proceed." (*Id*. ¶¶ 138, 226.) Silva received the citation on April 26, 2010. (*Id*. ¶ 132.)

The citation, dated April 10, 2010, describes Silva's alleged violation of a provision of the Pennsylvania Dog Law which prohibits the transfer of dogs at any public place other than a kennel, certain dog shows, or "transfer by a rescue network kennel within its own network or to another rescue network kennel." (Second Am. Compl. Ex. 1 [Dog Law Citation].) In the citation's "remarks" section, Loughlin noted that "Defendant did pay for transfer of dogs at above location," referencing the street address of the Marcus Hook McDonald's were he encountered Silva. (*Id*.) The Dog Law Bureau withdrew the citation on September 20, 2010. (Second Am. Compl. ¶¶ 44, 130; *see also* Commw. Defs.' Mot. to Dismiss Second Am. Compl. Ex. 3 [Magisterial District Court docket sheet].)

Shortly after the PSPCA seized the dogs, the Dog Law Bureau's director Susan West "sent out an announcement that 'the rescues' violated transport requirements" due to the poor conditions in the transport van. (Second Am. Compl. ¶¶ 71, 117.) Sixth Angel alleges West and the Dog Law Bureau issued announcements to this effect in writing and on the Internet. (*Id*. ¶ 117.) As a result, there "are now blogs and publications defaming Plaintiff circulating far and wide." (*Id*. ¶ 139.)

PSPCA and Dog Law Bureau officials meanwhile coordinated with authorities in Marcus Hook to harass Silva and Sixth Angel's volunteers. (*Id*. ¶¶ 198, 234.) Silva lives and works in Marcus Hook, where she maintains Sixth Angel's office and a network of foster homes for rescued dogs. (*See id*. ¶ 235.) Since the April 10, 2010 incident, Sixth Angel alleges Marcus Hook officials have harassed its employees and volunteers. (*Id*. ¶¶ 90-91, 261.) The pattern of harassment Sixth Angel describes includes accusations that Marcus Hook officials: issued Sixth Angel groundless citations for loose dogs and failure to remove dog feces; maintained a "stake out" of Sixth Angel's office; issued zoning citations intended to force Sixth Angel to change locations; and performed snap inspections of rental properties owned by Silva. (*Id*. ¶¶ 90-93, 98, 192-96, 261.) Sixth Angel further alleges that the mayor of Marcus Hook went door to door to each Sixth Angel foster home "in the company of several police officers," demanding that Sixth Angel's volunteers "get rid of their dogs and/or threatened them with citations of seizures." (*Id*. ¶¶ 7, 94-95, 102, 194.)

Silva, Sixth Angel and a second rescue organization, All Breed Rescue, filed this action on June 25, 2010. All Breed Rescue, a Vermont non-profit organization, had also had dogs on Wessel's van which the PSPCA had not released. However, by December 14, 2010, Sixth Angel and All Breed learned from the PSPCA that the dogs had been adopted. Sixth Angel then amended its Complaint to remove Silva, the PSPCA, and All Breed as parties. Sixth Angel's Second Amended

4

Complaint pits Sixth Angel against two groups of Defendants: (1) the "Dog Law Defendants" consisting of the Pennsylvania Dog Law Enforcement Bureau, its director Susan West, and Dog Warden Loughlin, and (2) the "Marcus Hook Defendants," comprising Marcus Hook Borough, Mayor James Schiliro, and Officer Ricci Pyle.

**II.     STANDARD OF REVIEW**

The Federal Rules of Civil Procedure mandate dismissal of complaints which fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Court accepts "as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom," viewing them in the light most favorable to the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

The Third Circuit applies a two-part analysis to determine whether claims should survive a Rule 12(b)(6) motion to dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The Court must first separate the factual and legal elements of each claim, accepting well-pleaded facts as true but disregarding legal conclusions. *See id*. Second, the Court must determine whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *See id*. at 211 (citing *Phillips*, 515 F.3d at 234-35). If the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," the Court should dismiss the complaint for failure to state a claim. *See Jones v. ABN Amro Mortg. Grp.*, 606 F.3d 119, 123 (3d Cir. 2010).

Courts look to the complaint and attached exhibits in ruling on a motion to dismiss. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2008); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). Courts may also consider undisputedly authentic documents

attached to a defendant's motion to dismiss if the plaintiff's claims are based on those documents, matters of public record, and records amenable to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007); *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). The Court need not, however, consider facts alleged for the first time in a plaintiff's reply brief. *See Mulholland v. Classic Mgmt. Inc.*, Civ. A. No. 09-2525, 2010 WL 2470834, at *6 n.7 (E.D. Pa. June 14, 2010) (citing *Pennsylvania ex rel. Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")).

### III. DISCUSSION

#### A. Sixth Angel's Failure to Comply With Rule 8

Sixth Angel's Second Amended Complaint spans 287 paragraphs, describing sixteen numbered counts over the course of 56 pages. Defendants contend this pleading violates Federal Rule of Civil Procedure 8(a). (Commw. Defs.' Mot. to Dismiss 3; Marcus Hook Defs.' Mot to Dismiss 2.) With respect to the bulk of Sixth Angel's claims, the Court agrees.

Sixth Angel references 42 U.S.C. §§ 1983, 1985 and 1988, which it invokes

> to protect Plaintiff's associational freedoms (First Amendment), the property and liberty interests of Plaintiff's dogs, license, reputations and profession, right to freely associate, right to be free from unfounded prosecution and "criminal investigation" (under the Fourth and Fourteenth Amendments), seizure and threats of seizure of property, rights to equal protection and rights and privileges under the United States Constitution's Interstate Commerce Clause . . . .

(Second Am. Compl. ¶ 15.) In addition to this litany of constitutional provisions, Sixth Angel also mentions defamation, abuse of process, and malicious prosecution. (*Id*. ¶¶ 249-50.)

6

These and other claims appear in a disorganized fashion throughout the Second Amended Complaint. Count X, for example, contains allegations regarding: (1) malicious prosecution; (2) abuse of process; (3) a claim that 3 P.S. § 459-603 is "unconstitutionally vague" as applied to Sixth Angel; (4) Defendants' unconstitutional desire to prevent Sixth Angel from engaging in dog rescue; and (5) damages for defamation and "derogatory publication" attributed to unspecified defendants. (*Id*. ¶¶ 239-50.) It is impossible to identify with certainty which claims apply to which Defendants.

Sixth Angel's Second Amended Complaint also generally fails to identify the relief the organization seeks. Federal Rule of Civil Procedure 8(a)(3) requires that a complaint include "a demand for the relief sought, which may include relief in the alternative or different types of relief." Apart from Sixth Angel's requests for a declaratory judgment with respect to the Pennsylvania Dog Law, the organization does not specify with particularity the relief it seeks. Rather, Sixth Angel requests "judgment in its favor," including "a preliminary injunction, damages, costs, legal fees and other relief as the Court deems just" to protect its rights, including its "right to association under the First Amendment and to practice its rescue activities under the Fourteenth Amendment." (*See, e.g.*, Second Am. Compl. ¶¶ 153, 213, 269.) The pleading also references compensatory and punitive damages in connection with Defendants' "flagrant and irresponsible actions all done maliciously and intentionally." (*Id*. ¶¶ 253-54.) Failure to specify relief sought beyond a "general prayer" for judgment weighs in favor of dismissal for noncompliance with Rule 8. *See RKO-Stanley Warner Theaters, Inc. v. Mellon Nat'l Bank & Trust*, 436 F.2d 1297, 1304 (3d Cir. 1970); *see also Liggon-Redding v. Souser*, 352 F. App'x 618, 619 (3d Cir. 2009) (affirming dismissal without prejudice where complaint failed to identify relief sought).

Sixth Angel is not acting pro se, and the organization is not entitled to the latitude reserved

for litigants proceeding without counsel. *See Marulli v. Alloy*, Civ. A. No. 04-2869, 2006 WL 2772553, at *6 (D.N.J. Sept. 23, 2006); *see also Hill v. Educ. Mgmt. Corp.*, Civ. A. No. 08-900, 2009 WL 3286627, at *4 (W.D. Pa. Oct. 13, 2009) (noting that it "is not the Court's duty to provide legal analysis for a party" represented by an attorney). The Court therefore will dismiss without prejudice the claims described in the Second Amended Complaint which do not comply with Rule 8. *See Ciarrocchi v. Celano and Kramer*, Civ. A. No. 09-2342, 2009 WL 2147920, at *2 (D.N.J. July 15, 2009).

Meanwhile, the Court will address the merits of the claims Sixth Angel has articulated with sufficient coherence to permit analysis: its challenges to the constitutionality of the Pennsylvania Dog Law under the dormant Commerce Clause and First Amendment with respect to 3 Pa. Cons. Stat. §§ 459-209(b) and 459-603(c).[1]

### B. Declaratory Judgment Claims Under the Dormant Commerce Clause

Only Count IV of Sixth Angel's Second Amended Complaint clearly identifies a claim and pairs it with particular relief. This count seeks declaratory judgment regarding the constitutionality of a state statute. (Second Am. Compl. ¶¶ 155-62, 283-87.) Sixth Angel argues that § 459-209(b) unconstitutionally burdens interstate commerce by requiring "a licensed kennel to deal only with in-state licensed dealers." (*Id*. ¶¶ 78-80.) The organization challenges the provision both on its face and as applied to Sixth Angel. (*Id*. ¶ 5.) Sixth Angel also brings facial and as-applied Commerce

---

[1] Sixth Angel also appears to argue that 3 P.S. §§ 459-208(b) is unconstitutional. (*See, e.g.*, Second Am. Compl. ¶ 118.) Section 459-208 no longer exists. *See* 3 P.S. § 459-208 (deleted by 1996 Pa. Laws 943). The Court therefore assumes Sixth Angel intended these arguments for its claims regarding § 459-209(b).

8

Clause challenges to § 459-603(c), contending the statute's failure to define the term "transfer" impedes its ability to bring dogs into the state. (*See id*. ¶ 242.)

### 1. Facial dormant Commerce Clause challenges

The Court must first determine whether § 459-209(b) or § 459-603(c) necessarily runs afoul of the dormant Commerce Clause. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008). This analysis requires a two-part inquiry, examining: (1) whether the law discriminates against interstate commerce in its purpose or effect; and (2) if it does not, whether the burden it imposes on interstate commerce is clearly excessive in relation to its putative local benefits. *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338-39 (2008); *Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 462 F.3d 249, 261 (3d Cir. 2006). The Court must presume that state statutes govern only conduct within their own borders and favor "a constitutional as opposed to an arguably unconstitutional interpretation whenever fairly possible." *IMS Health Inc. v. Ayotte*, 550 F.3d 42, 63 (1st Cir. 2008) (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 78 (1997)).

#### a. Facial dormant Commerce Clause challenge to § 459-209(b)

Sixth Angel argues § 459-209(b) requires Pennsylvania kennels "to deal only with in-state licensed dealers." (Second Am. Compl. ¶ 78.) The statute provides that a Pennsylvania kennel may not "knowingly accept, receive, buy, barter or exchange a dog with an *unlicensed* out-of-state dealer for resale." 3 P.S. § 459-209(b) (emphasis added). This language indicates that kennels may accept dogs from in-state or out-of-state dealers that have obtained a license.

This district examined the dormant Commerce Clause implications of the Pennsylvania Dog Law's kennel licensing scheme in *Zimmerman v. Wolff*, 622 F. Supp. 2d 240, 246 (E.D. Pa. 2008). Ervin Zimmerman, a kennel operator, obtained a federal kennel license under the Animal Welfare

9

Act ("AWA") but was not successful in applying for a kennel license in Pennsylvania. *Id*. at 241-42. Zimmerman argued Pennsylvania's licensing scheme conflicted with the AWA and violated the dormant Commerce Clause. *Id*. at 245. In rejecting this claim, the court observed that

> [t]he Pennsylvania Dog Law is an exercise of the state's traditional police power in relation to domestic animals. This traditional authority is preserved and expressly authorized by the AWA as 7 U.S.C. § 2143(a)(8) . . . expressly provides for additional state regulation in this area. [. . .]. Thus, plaintiff would be unable to state a claim that the Pennsylvania Dog Law violated the Commerce Clause even if his claim were brought properly under § 1983 and he were able to show that the Pennsylvania Dog Law interferes with interstate commerce.

*Id*. (citations omitted). Indeed, requiring a license to do business in a state is generally not an undue burden on interstate commerce. *See, e.g., Quik Payday, Inc. v. Stork*, 549 F.3d 1302, 1312-13 (10th Cir. 2008) (citing *Am. Trucking Ass'ns v. Mich. Pub. Serv. Comm'n*, 545 U.S. 429, 431-32 (2005).

Section 459-209(b) does not discriminate against out-of-state dealers.[2] Sixth Angel has also failed to plead any facts suggesting this provision burdens interstate commerce. The Court will therefore dismiss Sixth Angel's claim for a declaratory judgment that § 459-209(b) violates the dormant Commerce Clause on its face.

      b.  *Facial dormant Commerce Clause to § 459-603(c)*

Sixth Angel claims § 459-603(c) violates the dormant Commerce Clause on its face. Section 459-603(c) provides that it is unlawful

> for any person to . . . transfer . . . a dog at any public place in this Commonwealth other than a kennel licensed pursuant to this act, or

---

[2] Though the law requires out-of-state dealers to pay an additional $300 license fee not applicable to in-state applicants, the Dog Law Bureau has not enforced this fee since it was declared unconstitutional in *Prof'l Dog Breeders Advisory Council v. Wolff*. *See* Civ. A. No. 09-258, 2009 WL 2948527, at *7 (M.D. Pa. Sept. 11, 2009).

> a dog show, performance event or field trial sponsored by a recognized breed or kennel association or transfer by a rescue network kennel within its own network or to another rescue network kennel.

Sixth Angel makes no argument and pleads no facts in support of this claim. Rather, the organization offers only its assertion that the provision burdens interstate commerce due to its vague definition of "transfer." (Second Am. Compl. ¶¶ 235, 242.) Absent any indication that this provision discriminates against or burdens interstate commerce, this claim must be dismissed.

### 2. *As-applied dormant Commerce Clause challenges*

Sixth Angel also argues that §§ 459-209(b) and 459-603(c) violate the dormant Commerce Clause as they have been applied to the organization. The Court need not reach the merits of either claim, as they are unripe and moot, respectively.

#### a. *As-applied dormant Commerce Clause challenge to § 459-209(b)*

Sixth Angel's as-applied challenge to § 459-209(b) involves allegations that a PSPCA official threatened the organization with a citation for accepting dogs from Wessel. (*See id*. ¶¶ 5, 54.) An as-applied challenge requires the development of a factual record for the court to consider, addressing "whether a statute is unconstitutional on the facts of a particular case or to a particular party." *See Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009).

Sixth Angel does not plead that it has been cited under § 459-209(b). Though declaratory judgments "are usually sought before a completed injury has occurred," the Court concludes that Sixth Angel's as-applied challenge to § 459-209 is not ripe for declaratory relief. *See Constitution Party of Pa. v. Cortes*, 712 F. Supp. 2d 387, 398-99 (E.D. Pa. 2010).

Three factors are probative of ripeness for a declaratory judgment claim: (1) the adversity of

11

the parties' interests; (2) the conclusiveness of judgment; and (3) the utility of judgment. *Kodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004). Two of these factors, adversity and conclusiveness, hinge upon a plaintiff's showing that there is a substantial threat of real harm or a "real and substantial controversy" underlying the plaintiff's action. *Cortes*, 712 F. Supp. 2d at 399-400. Sixth Angel states that it fears "Defendants are able to cite Plaintiff and rescues such as Plaintiff" due to the prohibition on accepting dogs from unlicensed out-of-state kennels in § 459-209. (Second Am. Compl. ¶ 77.) Such speculation does not constitute a live controversy between the parties. The absence of any factual record would also render the Court's judgment on this claim unhelpful to the parties, as detailed review of the statute's application would be impossible. The Court therefore declines to review the constitutionality of § 459-209(b) as applied to Sixth Angel.

    b.   *As-applied dormant Commerce Clause challenge to § 459-603(c)*

Though Silva was cited under this statute, the citation has been withdrawn. (*Id*. ¶ 44.) Termination of criminal charges generally moots a plaintiff's as-applied challenge to the underlying statute. *See Ramirez v. Sanchez Ramos*, 438 F.3d 92, 94 (1st Cir. 2006). Sixth Angel responds that it will likely be cited under the provision in the future. (*See* Pl.'s Resp. to Mots. to Dismiss Am. Compl. 42.) It also implies that the Dog Law Defendants may continue to cite Sixth Angel and withdraw its citations prior to an adjudication on the merits as a means of harassing the organization. (Second Am. Compl. ¶ 44.)

There is an exception to the mootness doctrine for cases where a wrong is capable of repetition, yet evades review. *Rendell v. Rumsfeld*, 484 F.3d 236, 241 (3d Cir. 2007). This limited exception applies only when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable likelihood that the same

complaining party would be subjected to the same action again." *Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993). Sixth Angel's speculation that it will again be cited for transferring dogs in a public place does not establish a reasonable likelihood of recurring harm. The Court will therefore dismiss this claim as moot.

### C. Challenging § 459-603(c) Under the First Amendment

Sixth Angel contends § 459-603(c)'s prohibition of the "transfer" of dogs "has a chilling effect on dog rescue and transport." (Second Am. Compl. ¶ 82.) To the extent Sixth Angel has articulated an as-applied claim, that cause of action is moot for the reasons discussed in Section B-2, above. Sixth Angel's facial attack on the statute, meanwhile, fails on the merits.

Facial void-for-vagueness claims typically must involve First Amendment freedoms for the plaintiff challenging the statute to obtain standing. *See In re Marcone*, Civ. A. No. 08-164, 2009 WL 1220548, at *3 (E.D. Pa. Apr. 30, 2009) (citing *United States v. Pungitore*, 910 F.2d 1084, 1104 (3d Cir. 1990)). Sixth Angel invokes the First Amendment's protection of expressive association. (*See* Second Am. Compl. ¶¶ 129, 146.) It alleges that its rescue activities are "philosophically based" and reflect a policy position with respect to animal rescue. (*Id*. ¶¶ 26, 82.) For the purposes of this analysis, the Court will infer that Sixth Angel's facial attack on § 459-603 implicates First Amendment freedoms, as the organization pleads a link between the statute and its ability to foster support for its rescue activities.

Nonetheless, § 459-603 is not void for vagueness. A criminal statute is void for vagueness if it fails to define an offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited in a manner that does not encourage arbitrary and discriminatory enforcement." *Gonzales v. Carhart*, 550 U.S. 124, 148 (2007). To prevail on its facial challenge, Sixth Angel must

13

demonstrate that the statute is "impermissibly vague in all its applications." *Raab Family P'ship v. Borough of Magnolia*, Civ. A. No. 08-5050, 2009 WL 361135, at *13 (D.N.J. Feb. 13, 2009) (citing *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 972 (9th Cir. 2003)); *see also Wash. State*, 552 U.S. at 449 (2008).

The law prohibits the "transfer" of dogs "at any public place other than a kennel licensed pursuant to this act, or a dog show, performance event or field trial sponsored by a recognized breed or kennel association or transfer by a rescue network kennel within its own network or to another rescue network kennel." 3 Pa. Cons. Stat. § 459-603(c). It does not define the term "transfer." Sixth Angel contends that this deficiency renders the statute unconstitutionally vague. (Second Am. Compl. ¶¶ 81-82.)

Absent a statutory definition or "peculiar and appropriate meaning," Pennsylvania law provides that words shall be construed "according to their common and approved usage." 1 Pa. Cons. Stat. § 1903(a). Dictionaries are an appropriate source for the "common and approved usage of a term" in a Pennsylvania statute. *Love v. City of Philadelphia*, 543 A.2d 531, 532 (Pa. 1988). Black's Law Dictionary defines a transfer as "any mode of disposing of or parting with an asset or an interest in an asset, including a gift, the payment of money, release, lease, or creation of a lien or other encumbrance." Black's Law Dictionary 1636 (9th ed. 2009.)

Sixth Angel argues § 459-603's failure to define the term "transfer" could "mean it would be a crime to walk one's dog on a sidewalk and hand the leash to another individual" or to "pay a bill and contemporaneously being handed a dog." (Second Am. Compl. ¶¶ 137, 145.) Such interpretations ignore the implication of change in ownership inherent in the meaning of the word "transfer." The dictionary definition is consistent with the Dog Law Defendants' assertion that the

statute prohibits changes in ownership at locations, such as public lots, which are more difficult to regulate than the approved transfer sites identified in the statute. (*See* Commw. Defs.' Mot. to Dismiss Second Am. Compl. 12.) *See also Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.5 (1982) (noting that federal courts must "consider any limiting construction that a state court or enforcement agency has proffered"). It is also consistent with the statute's context, which clearly reflects the legislature's intention to regulate dog sales and adoptions.

The common meaning of the word "transfer" provides adequate notice of the conduct § 459-603 prohibits. The statute's failure to define this term thus does not render the law void for vagueness. *See United States v. Namey*, 364 F.3d 843, 844-45 (6th Cir. 2004) ("Where a term has a commonly accepted meaning, an ordinary person would be able to recognize whether the conduct in question is criminal.")

## IV. CONCLUSION

The Court will therefore dismiss Sixth Angel's claims for a declaratory judgment regarding the constitutionality of 3 Pa. Cons. Stat. §§ 459-209(b) and 459-603(c) under the dormant Commerce Clause and First Amendment. Unable to review the organization's remaining claims, the Court will dismiss these causes of action without prejudice. An Order consistent with this Memorandum will be docketed separately.