## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SIXTH ANGEL SHEPHERD RESCUE :
INC., : CIVIL ACTION
      Plaintiff, :
     :
    v. :
     :
SUSAN WEST, et al., : No. 10-3101
      Defendants. :

## MEMORANDUM

**Schiller, J.**                                                                                            **May 3, 2011**

Dog rescue organization Sixth Angel Shepherd Rescue, Inc. ("Sixth Angel") alleges that state and local officials have harassed its members since the Pennsylvania Society for the Prevention of Cruelty to Animals ("PSPCA") seized three of its dogs in April 2010. Sixth Angel's Third Amended Complaint alleges constitutional challenges to the Pennsylvania Dog Law, federal civil rights claims, and state-law tort claims. Specifically, Sixth Angel identifies two groups of Defendants: the "Dog Law Defendants" consisting of the Dog Law Bureau, its director Susan West, and Dog Warden Joseph Loughlin; and the "Marcus Hook Defendants," comprising Marcus Hook Borough, Mayor James Schiliro, and Officer Ricci Pyle. All Defendants have filed motions to dismiss. For the reasons that follow, the Court will grant these motions.

## I.        BACKGROUND

### A.        The April 10, 2010 Dog Seizure

Sixth Angel is a rescue network kennel licensed in Pennsylvania. (Third Am. Compl. ¶ 1.[1])

---

[1]Sixth Angel misnumbers the paragraphs in its Third Amended Complaint. The Court's citations refer to the paragraphs' chronological order.

The organization rescues dogs from southern animal shelters and transports them to the northeast for adoption. (*Id.* ¶ 21.) On the evening of April 10, 2010, volunteers from Sixth Angel waited for a van of dogs from North Carolina in Marcus Hook, Pennsylvania. (*Id.* ¶¶ 17, 26, 36.) The van arrived around 9:00 p.m. (*Id.* ¶ 36.) Joseph Loughlin, a dog warden from the Pennsylvania Dog Law Enforcement Bureau ("Dog Law Bureau"), then appeared with uniformed officers. (*Id.* ¶¶ 38, 40, 192.) Sixth Angel alleges Loughlin acted at the orders of Susan West, the Dog Law Bureau's Director of Dog Law Enforcement, who "had direct conversations with the representatives at the scene" via telephone. (*Id.* ¶¶ 4, 49; *see also* Pl.'s Resp. to Mot. of Commw. Defs. to Dismiss [Pl.'s Dog Law Resp.] 7 n.6.)

Loughlin seized documents from the van's driver, Ann Wessel. (Third Am. Compl. ¶¶ 36, 38.) He took the volunteers' car keys and told them they could not leave. (*Id.* ¶ 41.) Loughlin also threatened to cite them for violations of the Pennsylvania Dog Law, a statutory scheme regulating dog kennels and the sale and transport of dogs. (*Id.*; *see* 3 Pa. Cons. Stat. § 459-101.) Loughlin did not read anyone their *Miranda* rights or produce a warrant. (Third Am. Compl. ¶ 42.) He also threatened to arrest Wessel and summoned PSPCA agents to investigate her van. (*Id.* ¶¶ 38, 40, 49.)

Loughlin cited Wessel and Thunder's Angels, another Pennsylvania dog rescue organization, for violations of the Pennsylvania Dog Law. (*Id.* ¶¶ 45, 56.) Loughlin and PSPCA officials also told Wessel they would confiscate her own dogs if she did not surrender the dogs in the van. (*Id.*) Loughlin and the PSPCA officials then threatened the Sixth Angel members at the scene with citations for the poor conditions in which Wessel had transported the dogs, and for Wessel's failure to obtain a Pennsylvania out-of-state dealer license. (*Id.* ¶¶ 53, 55.) Wessel had applied for a license, but had not yet received one. (*Id.* ¶ 56.) As Loughlin questioned the Sixth Angel volunteers,

they were "subject to public ridicule" and "humiliation in Saturday night traffic with local residents and local police mandating Plaintiff's representatives leave the many dogs in cages in the parking lot, walk them, etc." (*Id.* ¶¶ 157, 192.) Sixth Angel alleges the PSPCA questioned and threatened its volunteers because West and Loughlin directed them to do so. (*Id.* ¶¶ 49, 53.)

PSPCA Director of Investigations George Bengal first asserted that Sixth Angel itself was operating without PSPCA approval. (*See id.* ¶ 59.) When Bengal discovered Sixth Angel was "an approved rescue," he refused to return Sixth Angel's dogs until a PSPCA veterinarian had examined the dogs. (*Id.* ¶¶ 48, 59.) Sixth Angel's volunteers waited for the veterinarian until 1:30 a.m. Loughlin told the Sixth Angel members that they could retrieve the organization's dogs from the PSPCA "the following day or the day after" once a veterinarian had seen them. (*See id.* ¶ 48.)

## B. Sixth Angel's Disputes With the Dog Law Bureau and PSPCA

The documents Loughlin seized from Wessel included bills and receipts memorializing Sixth Angel's ownership of three dogs in the van. (*Id.* ¶¶ 17, 26, 50.) Some of these records identified the dogs' owner as Terry Silva, Sixth Angel's founder and counsel in this action. (*See id.* ¶¶ 8, 28 n.4.) Despite this evidence that Sixth Angel and/or Silva owned the dogs, "Defendants came up with various excuses to delay and play along with one another" rather than return the dogs. (*Id.* ¶ 62.) A PSPCA representative finally told Sixth Angel that it intended to offer the dogs for adoption. (*Id.*)

On April 14 and April 15, 2010, Sixth Angel informed Defendants that it would file a lawsuit seeking return of its dogs. (*Id.* ¶ 63.) Sixth Angel and Silva then filed a lawsuit in this Court on April 16, 2010, alleging that the PSPCA's retention of the dogs was unconstitutional and constituted conversion. *Sixth Angel Shepherd Rescue, Inc. v. Bengal, et al.*, Civ. A. No. 10-1733, 2010 WL 2164521, at *1 (E.D. Pa. May 27, 2010) ("*Sixth Angel I*"). Sixth Angel established ownership of the

dogs and the Court therefore ordered their return. *Id.* at *4-5. The PSPCA returned Sixth Angel's dogs on June 11, 2010. (Third Am. Compl. ¶ 32 n.6.) *Sixth Angel I* is now stayed pending resolution of the PSPCA's appeal.

Sixth Angel alleges that its lawsuit caused the Dog Law Bureau and PSPCA to retaliate against it. (*Id.* ¶ 166.) First, Silva received a citation from Loughlin on April 26, 2010, accusing her of buying and paying for the transfer of dogs with respect to the April 10 incident. (*Id.* ¶¶ 64-65.) The citation, dated April 10, 2010, states that **"**Defendant [Terry Silva] did pay for transfer of dogs at above location," referencing the street address where Loughlin encountered Silva. (*Id.* Ex. 2 [Dog Law Citation].) The Dog Law Bureau withdrew the citation on September 20, 2010. (*See* Third Am. Compl. ¶¶ 43, 118.) However, Sixth Angel claims this citation "still looms as to Plaintiff's activities." (*Id.* ¶ 118.) Silva has yet to receive a refund of the fee she paid to respond to the citation in pleading not guilty. (*Id.* ¶ 43.)

In addition, Sixth Angel alleges the Dog Law Bureau ignored the evidence it seized from Wessel. (*Id.* ¶ 70.) These documents allegedly demonstrated Sixth Angel owned the dogs in Wessel's van before they arrived in Marcus Hook. (*Id.*) The organization attributes this to the Dog Law Bureau's failure to "create policies mandating investigation, review of documents and prompt property return in violation of the United States Constitution." (*Id.* ¶ 72.) Sixth Angel also alleges that the Dog Law Bureau and PSPCA knew all along that Sixth Angel was not "buying" dogs on April 10, 2010 because Defendants "said as much at the time of the seizure." (*Id.* ¶ 87.)

Sixth Angel identifies other instances of Dog Law Bureau and PSPCA harassment. The Dog Law Bureau and PSPCA removed Sixth Angel's designation as an "approved" rescue organization on the PSPCA and Delaware County SPCA registries "without notice or explanation." (*Id.* ¶ 60.)

The Delaware County SPCA meanwhile singled out Sixth Angel for investigation. (*See id.* ¶ 66.)

West and the Dog Law Bureau also issued statements regarding the April 10 seizure of Sixth Angel's dogs. Sixth Angel alleges these communications "defamed and blamed the rescues including Plaintiff for the conditions of the transport and further falsely stated that the rescues present were 'buying' dogs and were not allowed to use paid transports." (*Id.* ¶ 162.) Sixth Angel has provided a copy of an e-mail from West dated April 14, 2010, in which West responds to a request for "clarification" regarding an "article/blog" about the seizure:

> The rescue had dogs in a van with poor ventilation, one crate didn't have a bottom on it and so the urine from that dog had no place to go but down, the crates were stacked on top of one another and crates did not have adequate space for the number of dogs in each one, some were very dirty . . . I hope you get the picture. There were dogs without health certificates and money exchanged hands (a sale in a public place is illegal).
>
> We have nothing against rescues, and are happy to see people helping dogs. But there is a right and a wrong way to do things. We are required to enforce the dog law. If dogs are not housed correctly, that is bad for a dog regardless of whether the person is a rescue or a commercial kennel.

(*Id.* Ex. 1 [West e-mail].) Sixth Angel alleges West, Loughlin and the Dog Law Bureau circulated "other such defamatory and disparaging statements without correction." (*Id.* ¶¶ 75, 183.)

### C.     Sixth Angel's Disputes With Marcus Hook

Sixth Angel claims the PSPCA and Dog Law Bureau meanwhile coordinated with authorities in Marcus Hook to harass Silva and Sixth Angel's volunteers. (*Id.* ¶¶ 14, 88.) Silva lives and works in Marcus Hook, where she maintains Sixth Angel's office and a network of foster homes for its rescued dogs. (*See id.* ¶¶ 9, 127-28.) Silva is also involved in a property rental business in the area. (*Id.* ¶ 108.) Since April 10, 2010, Sixth Angel claims Marcus Hook officials have focused their

attention on its employees and volunteers, particularly Silva. (*See, e.g.*, *id.* ¶¶ 9, 92, 95.)

The pattern of harassment Sixth Angel describes includes accusations that Marcus Hook officials: (1) issued Sixth Angel groundless citations for loose dogs and failure to remove dog feces; (2) maintained a "stake out" of Sixth Angel's office; (3) issued zoning citations intended to force Sixth Angel to change locations; and (4) inspected rental properties owned by Silva. (*Id.* ¶ 88.) Sixth Angel further alleges that Marcus Hook police officer Ricci Pyle contacted police in another jurisdiction to have them harass a Sixth Angel volunteer who had moved out of Marcus Hook. (*Id.* ¶ 105.) Sixth Angel states that it has paid over $2,000 in "appeal fees" required to challenge citations from Marcus Hook.

### 1. *Zoning dispute*

About two weeks after Sixth Angel filed *Sixth Angel I*, a Marcus Hook zoning officer cited Sixth Angel at its Marcus Hook office on April 28, 2010. (*Id.* ¶ 110.) The zoning officer issued a cease and desist letter accusing it of operating a "dog intake facility" in violation of the local zoning code. (*Id.* ¶ 110, 113, 127.) Sixth Angel appealed the zoning officer's decision to the Marcus Hook Zoning Hearing Board. (*Id.* ¶ 127.)

The Zoning Hearing Board originally scheduled a hearing for July 13, 2010, but Silva could not attend the hearing because she was in court for another case. (*Id.* ¶¶ 133-34.) The Zoning Hearing Board rescheduled the hearing to August 30, 2010, but Silva could not attend the hearing on that date because one of her parents passed away. (*Id.* ¶ 135.) On December 2, 2010, the Zoning Hearing Board noticed the hearing for December 15, 2010. (*Id.* ¶¶ 137-38.) Silva responded that she could not attend due to a court commitment in another county. (*Id.* ¶ 139.) The hearing proceeded in Silva's absence. (*Id.* ¶ 141-42.)

The Zoning Hearing Board issued a decision dated December 17, 2010. (*Id*. ¶ 144.) The Zoning Hearing Board based its decision on "testimony of Borough officers, which the Board found highly credible, and various relevant letters and documents." (*Id*.) It affirmed the zoning officer's determination that Sixth Angel was "operating a dog kennel in the Central Retail zoning district without a zoning permit in violation of the zoning ordinance." (*Id*. Ex. 3 [Zoning Hearing Board decision].) The decision states that Sixth Angel's zoning permit specifically "notes that it does not provide for the keeping, housing, kenneling, [or] maintaining" of dogs on the property. (*Id*.)

Sixth Angel alleges the Board heard "almost solely the hearsay, un-crossexamined 'testimony' of Defendant Schilero [sic], in an effort to usurp Plaintiff's constitutional rights for an order of 'no dogs allowed.'" (Third Am. Compl. ¶ 114.) The organization also states that the Board violated the Pennsylvania Municipalities Planning Code by failing to permit Silva, Sixth Angel volunteer Samantha Kenney, and other "volunteers and board members . . . [to] attend and testify at the hearing and have the opportunity to cross-examine witnesses and present evidence." (*Id*. ¶ 143.) Sixth Angel is currently pursuing an appeal of the Board's decision through the Pennsylvania court system. (*Id*. ¶ 144; *see also* Pl.'s Answer to Marcus Hook Borough Defs.' Mot. to Dismiss the Third Am. Compl. [Pl.'s Marcus Hook Resp.] 11 n.8, 28.)

### 2. *Rental license fees*

In addition to her work with Sixth Angel, Silva has been "involved in a property management company on several properties in Marcus Hook since 2003." (Third Am. Compl. ¶ 147.) Silva received citations for failure to pay rental license fees "regularly from 2009 onward." (*Id*.) Sixth Angel claims these fees were all either paid in full or not yet due when Silva was cited for non-payment. (*Id*. ¶ 154.)

Silva challenged the citations in a local court. Prior to a hearing scheduled for October 7, 2010, Marcus Hook withdrew "all citations and charges." (*Id*. ¶¶ 149-50.) Nevertheless, a constable accosted Silva on the evening of February 9, 2011, threatening to arrest her at her home for "failure to pay one of the 'rental license fees' that had been withdrawn a year and a half earlier." (*Id*. ¶ 152.) Silva paid a fine and scheduled an appointment with a local district justice rather than submit to imprisonment. (*Id*. ¶ 153.) Sixth Angel claims Marcus Hook pursued these "spurious charges" to harass Silva in her capacity as a Sixth Angel member. (*See id*. ¶ 154.)

### 3. Abusive adopter

Sixth Angel alleges that Mayor Schiliro caused an individual who had adopted a dog from the organization, Joseph Neher, to become abusive and threatening toward Sixth Angel staff in February of 2011. (*Id*. ¶¶ 96-101.) Sixth Angel claims Schiliro is responsible for "defam[ing] and disparag[ing] Plaintiff and its representatives [and] causing an otherwise precarious individual to become unstable, harassing and threatening to the volunteers and representatives at Sixth Angel's location (including a teenage volunteer) and to" Silva. (*Id*. ¶ 100.) Specifically, Neher called Silva's office "only to insult, threaten, harass, scream at and hang up on any individual answering the telephone." (*Id*. ¶ 98.) Neher threatened to settle the dispute "face to face." (*Id*. ¶ 100.)

### 4. Marcus Hook dog citations

Sixth Angel also claims Marcus Hook officials, including the Marcus Hook Defendants, have harassed its members by issuing or threatening to issue citations for dog-related offenses. Generally, Sixth Angel alleges that whenever its "representatives walk dogs in Marcus Hook police officers follow them and threaten citations whereas residents walking dogs do so even in parks freely and without harassment." (*Id*. ¶ 95.) Mayor Schiliro also personally went door-to-door in Marcus Hook

to discourage local residents from housing dogs for Sixth Angel, "threatening them with citations, taking their dogs and bringing to their homes police officers in order to intimidate them about having fosters for Plaintiff." (*Id*. ¶ 102.)

In addition, Sixth Angel states that Officer Pyle has cited Silva for a loose dog which he knew had been adopted by another person a year before; rather than cite the "known owner of the dog," Pyle cited Silva on April 23, 2010. (*Id*. ¶ 92.) Owners of other loose dogs also have not been cited. (*Id*. ¶ 93.) Silva's citation was dismissed when Pyle failed to appear. (*Id*. ¶ 94.) However, Sixth Angel alleges it still had to pay fees to resolve the matter. (*Id*.)

## II.     STANDARD OF REVIEW

### A.     Failure to State a Claim

The Federal Rules of Civil Procedure mandate dismissal of complaints which fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Court accepts "as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom," viewing them in the light most favorable to the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

The Third Circuit applies a two-part analysis to determine whether claims should survive a Rule 12(b)(6) motion to dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The Court must first separate the factual and legal elements of each claim, accepting well-pleaded facts as true but disregarding legal conclusions. *See id*. Second, the Court must determine whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *See id*. at 211 (citing *Phillips*, 515 F.3d at 234-35). If the well-pleaded facts "do not permit the court to infer more

than the mere possibility of misconduct," the Court should dismiss the complaint for failure to state a claim. *See Jones v. ABN Amro Mortg. Grp.*, 606 F.3d 119, 123 (3d Cir. 2010).

Courts look to the complaint and attached exhibits in ruling on a motion to dismiss. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2008); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). Courts may also consider undisputedly authentic documents attached to a defendant's motion to dismiss if the plaintiff's claims are based on those documents, matters of public record, and records amenable to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007); *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). The Court need not, however, consider facts alleged for the first time in a plaintiff's reply brief. *See Mulholland v. Classic Mgmt. Inc.*, Civ. A. No. 09-2525, 2010 WL 2470834, at *6 n.7 (E.D. Pa. June 14, 2010) (citing *Pennsylvania ex rel. Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

## B.     Eleventh Amendment Immunity

The Dog Law Defendants also seek to dismiss Sixth Angel's Third Amended Complaint for lack of jurisdiction, invoking sovereign immunity under Federal Rule of Civil Procedure 12(b)(1). Their claim that the Eleventh Amendment bars this lawsuit is a facial challenge to the Court's jurisdiction. *See M & M Stone Co. v. Pa. Dep't of Envtl. Protection*, Civ. A. No. 07-4784, 2008 WL 4467176, at *13 (E.D. Pa. Sept. 29, 2008). For the purpose of resolving this motion, the Court accepts Plaintiff's allegations as true. *See Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). As the parties asserting immunity, the Dog Law Defendants bear the burdens of production and persuasion. *See Febres v. Camden Bd. of Educ.*, 445 F.3d 227, 229 (3d Cir. 2006).

## III.    DISCUSSION

In addition to their arguments on the merits, Defendants advance threshold challenges to Sixth Angel's claims including the organization's failure to plead in accordance with Rule 8, the law of the case doctrine, and sovereign immunity. The Court's exercise of its independent obligation to examine its jurisdiction reveals further deficiencies in Sixth Angel's pleading. The Court's resolution of these issues precludes consideration of the merits of many of Sixth Angel's claims.

### A.    Sixth Angel's Noncompliance With Rule 8

The Court dismissed the bulk of Sixth Angel's Second Amended Complaint without prejudice because the organization did not comply with Rule 8. Defendants argue Sixth Angel's 224-paragraph Third Amended Complaint likewise violates the Rule's "short and plain statement" requirement. Defendants also state that Sixth Angel disregarded the Court's directive that Sixth Angel organize its pleading to allege a distinct cause of action in each count. Defendants urge dismissal with prejudice on these grounds.

Defendants are correct that the Third Circuit permits trial courts to dismiss unintelligible claims once a plaintiff has been given an opportunity to remedy a pleading's defects. *See, e.g., Moss v. United States*, 329 F. App'x 335, 336 (3d Cir. 2009) (citing *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). It is also possible that Sixth Angel has buried further claims in its pleading beyond those identified in its eleven numbered counts. For example, the Court observes that Sixth Angel alludes to other causes of action, including: various forms of conspiracy (*See* Third Am. Compl. ¶¶ 13-14, 88); defamation (*id*. ¶¶ 75, 96-101, 121); equal protection (*id*. ¶ 163); and harm to unspecified liberty interests and civil rights, (*id*. ¶¶ 125, 154). To the extent Sixth Angel intended to pursue these causes of action with this pleading, the Court will grant Defendants' request to dismiss these claims

with prejudice for repeated noncompliance with Rule 8.  *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 703-04 (3d Cir. 1996).

### 1.     *Remaining federal claims*

Sixth Angel brings the following federal claims under 42 U.S.C. § 1983:  Fourth Amendment claims against all Defendants in Counts I, II, VI and IX; a declaratory judgment claim against the Dog Law Defendants under the First Amendment and Dormant Commerce Clause in Count III; First Amendment associational freedom claims against the Dog Law Defendants and Mayor Schiliro and Marcus Hook in Counts IV and VIII, respectively; Fourth Amendment and Procedural Due Process claims against all Defendants in Count V; and a Substantive Due Process Claim against Mayor Schiliro and Marcus Hook in Count VII.[2]  On each count, Sixth Angel seeks unspecified injunctive relief, damages, and either "other relief" or "other relief as the Court deems just to protect Plaintiff's right to association under the First Amendment and to practice its rescue activities under the Fourteenth Amendment."  *(See, e.g.*, Third Am. Compl. ¶ 211.)

### 2.     *Remaining state-law claims*

Sixth Angel brings state-law claims for conversion and bailment against the Dog Law Defendants in Counts X and XI, respectively.  Sixth Angel seeks the same relief on these claims as it does on its federal claims.  (*See, e.g.*, *id.* ¶ 220.)

---

[2] Sixth Angel also references 42 U.S.C. § 1985 in its jurisdictional statement, and frequently suggests conspiracies among Defendants.  (*See* Third Am. Compl. ¶¶ 13, 118, 170.) The organization's Response to the Dog Law Defendants' motion to dismiss suggests its citation of  § 1985 "was a typographical error."  (Pl.'s Dog Law Resp. 6 n.5.)  In any event, as Sixth Angel does not provide a short and plain statement of any § 1985 claim in a distinct count in its Third Amended Complaint, the Court need not speculate as to what such a claim might be.

### B.     The Law of the Case Bars Sixth Angel's Declaratory Judgment Claims

Count III of Sixth Angel's Third Amended Complaint reiterates declaratory judgment claims which the Court dismissed with prejudice on February 15, 2011. (*See* Third Am. Compl. ¶¶ 172-73.) Sixth Angel includes these claims here to signal its intention to appeal. (*See* Pl.'s Dog Law Reply 5 n.4.) They are otherwise identical to their counterparts in Sixth Angel's prior pleadings.

The Court's earlier ruling is the law of the case. To re-litigate these claims, Sixth Angel would have to demonstrate that new evidence, new law, or some such exceptional circumstance warranted an exception to the law of the case doctrine. *See In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009). Sixth Angel offers no argument on this point. The Court declines to disturb its decision that Sixth Angel's declaratory judgment claims fail under the First Amendment and Dormant Commerce Clause. *Sixth Angel I,* 2011 WL 605697, at *5-9.

### C.     The Dog Law Defendants' Sovereign Immunity

The Dog Law Defendants invoke Eleventh Amendment immunity with respect to all claims against the Dog Law Bureau and official capacity claims for damages against Loughlin and West. The Eleventh Amendment deprives federal courts of jurisdiction over lawsuits against nonconsenting states, state agencies, and state officials acting in their official capacities. U.S. Const. Amend. XI; *see also Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 ,72-73 (2000); *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996). There are three exceptions to the Eleventh Amendment's jurisdictional bar: (1) Congressional abrogation under the Fourteenth Amendment; (2) state waiver; and (3) official capacity lawsuits against a state official for prospective injunctive relief. *See, e.g., Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002).

The Dog Law Bureau and its officials are state actors within the meaning of the Eleventh

Amendment. *Barber v. Pa. Dep't of Agric.*, Civ. A. No. 2010 WL 1816760, at *3 (W.D. Pa. May 3, 2010) (citing *Taylor v. North*, Civ. A. No. 96-3666, 1996 WL 482985, at *2 (E.D. Pa. Aug. 15, 1996)). Congressional abrogation is not at issue in this case, as Congress did not strip states of sovereign immunity in passing 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 345 (1979); *see also Antretter v. Pennsylvania*, Civ. A. No. 10-1924, 2010 WL 4386507, at *3 (M.D. Pa. Oct. 8, 2010) (noting Congress has not abrogated Eleventh Amendment immunity "with respect to federal lawsuits involving dog law enforcement").

### 1. *State waiver does not apply to Sixth Angel's claims*

Sixth Angel argues Pennsylvania's limited waiver of sovereign immunity under 42 Pa. Cons. Stat. § 8522 permits jurisdiction over the Dog Law Defendants in this case. Pennsylvania has not consented to federal court jurisdiction. 42 Pa. Cons. Stat. § 8521(b); *see also Draper v. Darby Twp. Police Dep't*, Civ. A. No. 10-1080, 2011 WL 830292, at *2 (E.D. Pa. Mar. 7, 2011). Sixth Angel's reliance on § 8522 is thus misplaced, because the statute does not waive Pennsylvania's immunity with respect to federal court actions. *See Lombardo v. Pa. Dep't of Pub. Welfare*, 540 F.3d 190, 195 (3d Cir. 2008) (citation omitted); *see also Dougherty v. Snyder*, Civ. A. No. 10-1071, 2011 WL 292236, at *12 n.26 (M.D. Pa. Jan. 25, 2011) (citing *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 n.5 (3d Cir. 2010)).

Courts in this District have addressed the § 8522(b) exceptions in § 1983 actions against state official defendants. *See, e.g., Bowman v. Reilly*, Civ. A. No. 09-1322, 2009 WL 1636021, at *2 (E.D. Pa. June 10, 2009). Examining the relevant provisions in an abundance of caution, the Court finds that neither exception Sixth Angel cites is applicable.

Sixth Angel directs the Court to 42 Pa. Cons. Stat. §§ 8522(b)(3) and (6), which waive

immunity to claims arising from the state's care, custody or control of personal property and animals, respectively. (*See* Pl.'s Dog Law Resp. 22.) Both exceptions require a plaintiff to show that the state had physical custody of the animal or item at issue. *See Govan v. Phila. Hous. Auth.*, 848 A.2d 193, 198 (Pa. Commw. Ct. 2004) (citing *Giovannitti v. Dep't of Transp.*, 537 A.2d 966, 968 (Pa. Commw. Ct. 1988)). An "agency's regulatory and enforcement authority" does not constitute "'control' for the purposes of sovereign immunity." *Id.*

The dogs seized on April 10, 2010 are the basis of Sixth Angel's "property" and "animal" waiver arguments. (*See* Pl.'s Dog Law Resp. 22-23.) The Dog Law Defendants never possessed these dogs. Sixth Angel alleges that the Dog Law Defendants "directed seizure [of the dogs] through the SPCA." (Third Am. Compl. ¶ 27.) Nevertheless, Sixth Angel's allegations also state that the PSPCA, not the Dog Law Defendants, actually seized and retained the dogs. (*Id.* ¶¶ 62, 90,111, 119.) The PSPCA is neither an arm of the Dog Law Bureau nor a state agency in its own right. *See Snead v. Soc'y for Prevention of Cruelty to Animals of Pa.*, 985 A.2d 909, 913-14 (Pa. 2009). These exceptions thus do not apply here.

### 2. Consequences of sovereign immunity

Because Pennsylvania has not waived sovereign immunity, Sixth Angel's claims against the Dog Law Bureau itself must be dismissed. *Seminole Tribe*, 517 U.S. at 58; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Sovereign immunity likewise bars Sixth Angel's damages claims against West and Loughlin in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *see also Betts v. New Castle Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010).[3] The

---

[3] Sixth Angel's federal damages claims against the Dog Law Bureau and Loughlin and West in their official capacities will also be dismissed because state agencies and state officers acting in their official capacities are not "persons" within the meaning of § 1983. *See Will v.*

Court will dismiss these claims.

The Eleventh Amendment does not preclude Sixth Angel's claims against Loughlin and West to the extent that they seek prospective injunctive relief against these Defendants in their official capacities. *See Hindes v. F.D.I.C.*, 137 F.3d 148, 165-66 (3d Cir. 1998) (citing *Ex Parte Young*, 209 U.S. 123 (1908)). The Eleventh Amendment also does not shield Loughlin and West from Sixth Angel's claims against them in their personal capacities. *See, e.g.*, *Johnson v. Wenerowicz*, Civ. A. No. 10-5027, 2011 WL 1399809, at *5 (E.D. Pa. Apr. 8, 2011) (citing *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990)). In sum, only Sixth Angel's claims for injunctive relief and its personal capacity claims survive the Court's Eleventh Amendment analysis with respect to its claims against the Dog Law Defendants. However, as the Court explains below, none of these claims may proceed past Defendants' motions to dismiss.

**D.      Sixth Angel's Standing to Seek Injunctive Relief**

Though Sixth Angel's claims for injunctive relief escaped dismissal on Eleventh Amendment grounds, they cannot proceed due to the organization's lack of standing. Federal courts have "an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *Summers v. Earth Island Inst.*, 555 U.S. 488, 129 S. Ct. 1142, 1152 (2009) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). To demonstrate constitutional standing, plaintiffs must show: (1) injury in fact; (2) causation; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In addition, standing to seek injunctive relief requires a showing that the plaintiff faces "a real and immediate threat that he would again suffer the injury." *Smith v. Chrysler Fin. Corp.*, Civ. A. No. 00-6003, 2004 WL 3201002, at *4 (D.N.J. Dec.

---

*Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

30, 2004) (citing *Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987)).

Sixth Angel lacks standing because its allegations do not demonstrate that its injuries are redressable. At the pleading stage, plaintiffs need not craft specific requests for injunctive relief. *See, e.g., City of New York v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 353-54 (E.D.N.Y. 2007); *Bayaa v. United Airlines, Inc.*, 249 F. Supp. 2d 1198, 1205 (C.D. Cal. 2002). However, requests that a court grant any "relief it deems just" are not sufficient to show redressability. *Scott v. DiGuglielmo*, 615 F. Supp. 2d 368, 373 (E.D. Pa. 2009) (citing *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 143 (3d Cir. 2009)); *see also Kern v. Wal-Mart Stores, Inc.*, Civ. A. No. 10-827, 2011 WL 1344234, at *10 (W.D.N.Y. Apr. 8, 2011).

With the exception of its previously-dismissed declaratory judgment claims, Sixth Angel's requests for equitable relief are amorphous. Sixth Angel seeks "necessary injunctive relief" relevant to its First Amendment right "to fully associate." (Third Am. Compl. ¶ 179.) Sixth Angel also requests "injunctive relief such that the unconstitutional behavior not affect and infringe upon Plaintiff's rights to free use of property and/or possession/ownership of property" with respect to its Fourth and Fourteenth Amendment claims arising from its zoning dispute and the Dog Law Defendants' "policies and procedures allowing for the improper taking of private property . . . without regard to prompt rational withdrawal of unfounded citations." (*Id*. ¶¶ 184-88.) Sixth Angel's own characterization of the relief it seeks underscores its amorphous nature. For example, Sixth Angel observes that "the Third Amended Complaint . . . seeks to enjoin behavior that would restrain officials from performing acts." (Pl.'s Marcus Hook Resp. 41 n.23.)

At best, the Third Amended Complaint seeks the sort of "obey the law" injunctions courts routinely decline to grant. *See, e.g.*, *Hillard v. City of Fairbury*, Civ. A. No. 08-3031, 2010 WL

2978145, at *9 (D. Neb. July 23, 2010) (granting summary judgment as to claims for injunctive relief because "the court cannot and will not issue an injunction requiring Defendants to do nothing more than 'obey the law.'") (citing *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 444 (1974)); *Rinehart v. Smart*, Civ. A. No. 05-1473, 2006 WL 1525939, at *5 (W.D. Okla. May 25, 2006) (granting motion to dismiss with respect to official capacity claims for injunctive relief where "plaintiffs ask the court to enjoin defendants . . . from violating [their and others'] constitutional rights in the future."). The Court will therefore dismiss Sixth Angel's claims for injunctive relief.

### E. Sixth Angel's Associational Standing

As the Third Amended Complaint's sole Plaintiff, Sixth Angel asserts the rights of its members including its counsel, Terry Silva. An association has standing to bring suit on behalf of its members when: (1) its members would have standing in their own right; (2) the interests at stake are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members. *Pa. Prison Soc'y v. Cortes*, 622 F.3d 215, 228 (3d Cir. 2010) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). The first two prongs of the *Hunt* test are constitutional; the third is prudential. *See United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996).

With respect to the participation requirement, the Third Circuit has cautioned that "conferring associational standing would be improper for claims requiring a fact-intensive-individual inquiry." *Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 286 (3d Cir. 2002). Courts have generally held that requests by an association for equitable relief do not require participation by individual association members, while claims for damages "usually require significant individual

18

participation, which fatally undercuts a request for associational standing." *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 207 (D.N.J. 2003); *see also Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004) ("We know of no Supreme Court or federal court of appeals ruling that an association has standing to pursue damages claims on behalf of its members."). In this case, only damages claims remain.

Sixth Angel's pleadings conflate harm to the organization with injuries to various individual Sixth Angel members, particularly Silva herself. In this vein, Sixth Angel describes interference with its "reputations and profession," characterizes a citation issued to Silva personally as alleging that Sixth Angel violated the Pennsylvania Dog Law, and references an incident during which "Plaintiff Sixth Angel then had to . . . sit in court for half a day," apparently with respect to Silva's own court case. (*See, e.g.*, Third Am. Compl. ¶¶ 13, 68, 94.) The organization also brings claims arising from Silva's near-arrest for failure to pay rental license fees in relation to her rental business. (*Id.* ¶ 193; *see also* Pl.'s Marcus Hook Resp. 4-5.)

In any event, many of Sixth Angel's damages claims are not shared by all its members. Rather, individualized injuries predominate. *See JFK Health & Welfare Fund, Inc. v. Analie Tours, Inc.*, Civ. A. No. 2008 WL 819066, at *5 (E.D.N.Y. Mar. 25, 2008) (quoting *Warth v. Seldin*, 422 U.S. 490, 515-16 (1975)). Even assuming the claims seeking damages were germane to Sixth Angel's organizational interests, they would require calculation of individualized damages. *Cf. PennEnvironment v. RRI Energy Ne. Mgmt. Co.*, 744 F. Supp. 2d 466, 482 (W.D. Pa. 2010) (noting individual participation is unnecessary where "relief sought does not require individualized proof").

In addition to claims arising from Silva's rental license citation, a number of other claims similarly require individual participation to determine damages. Count I is based on certain Sixth

Angel members being subject to "ridicule and humiliation" during the April 10, 2010 dog seizure. (Third Am. Compl. ¶ 157.) Count II involves the rental license fee incident and other citations issued to Silva personally. (*Id.* ¶ 168.) Count VI is a redundant Fourth Amendment claim based on the same incidents at issue in Counts I and II. (*Id.* ¶¶ 190-96.) Sixth Angel does not have standing to pursue these individual members' grievances.

Nor does Sixth Angel enjoy third-party standing in this case. The Supreme Court has clarified that third-party standing is appropriate where there is some obstacle to the third party asserting its own rights. *Singleton v. Wulff*, 428 U.S. 106, 114-16 (1976); *see also Interactive Media Entm't & Gaming Ass'n, Inc. v. Holder*, Civ. A. No. 09-1301, 2011 WL 802106, at *5 (D.N.J. Mar. 7, 2011) (citing *Nasir v. Morgan*, 350 F.3d 366, 376 (3d Cir. 2003)). Sixth Angel must thus show that its members "face obstacles in pursuing their own claims" to demonstrate the propriety of associational standing as to those claims. *See, e.g., Interactive Media*, 2011 WL 802106, at *5.

Sixth Angel's members can bring their own claims. Indeed, Silva was herself a plaintiff in this action until Sixth Angel filed its Second Amended Complaint — apparently removing Silva as a co-plaintiff in response to pending defense motions to disqualify her as trial counsel under the attorney-witness rule. There is no third-party standing in this case.

The Court will dismiss claims asserted on behalf of individual Sixth Angel members for lack of standing. However, "[a]n organizational plaintiff may establish standing to bring suit on its own behalf when it seeks redress for an injury suffered by the organization itself." *White Tail Park, Inc. v. Stoube*, 413 F.3d 451, 458 (4th Cir. 2005) (citing *Warth*, 422 U.S. at 511)). The Court will therefore examine claims arising from injury directly to Sixth Angel.

**F.      Sixth Angel's Remaining Damages Claims**

The Court discerns the following remaining causes of action in Sixth Angel's Third Amended Complaint that arise from injury to the organization itself: (1) Fourth Amendment and state law claims against Loughlin and West based on the April 10, 2010 seizure of Sixth Angel's dogs; (2) First Amendment expressive association claims against all Defendants; (3) Fourth and Fourteenth Amendment claims arising from Sixth Angel's zoning dispute with Marcus Hook; and (4) Fourth Amendment abuse of process claims against all Defendants.

### 1.      *Dog seizure claims against Loughlin and West*

The only claims remaining against the Dog Law Defendants are Sixth Angel's individual capacity damages claims against Loughlin and West. A state official sued in his official capacity for prospective injunctive relief is a "person" within the meaning of § 1983 and does not enjoy Eleventh Amendment immunity. *Hindes*, 137 F.3d at 165. In a § 1983 action, a plaintiff must allege that the defendant had personal involvement in committing the alleged violation. *Wenerowicz*, 2011 WL 1399809, at *5 (citing *Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir. 1988)). Sixth Angel satisfies this requirement. (*See* Third Am. Compl. ¶¶ 4, 49.) The Court may thus consider the organization's individual capacity claims against Loughlin and West.

### a.      *Fourth Amendment property seizure claim*

Sixth Angel's Fourth Amendment claim against Loughlin and West arises from their involvement in the seizure of the organization's dogs on April 10, 2010. (*See* Third Am. Compl. ¶¶ 156, 182-83, 185.) Specifically, Sixth Angel alleges Loughlin and West "improperly retained Plaintiff's dogs" in violation of the Fourth Amendment due to the Dog Law Bureau's "policies." (*Id.* ¶ 156.) This claim fails because Loughlin and West did not seize Sixth Angel's dogs.

Dispossessing someone of a dog "in which she had an ownership interest qualifies as a seizure" for Fourth Amendment purposes. *Wray v. Painter*, Civ. A. No. 09-5792, 2010 WL 889984, at *3 (E.D. Pa. Mar. 5, 2010) (citations omitted). However, the Third Amended Complaint states that the PSPCA — not the Dog Law Bureau or its employees — seized and retained Sixth Angel's dogs. Indeed, Silva and Sixth Angel previously obtained a preliminary injunction to retrieve Sixth Angel's dogs from the PSPCA. (*Id.* ¶¶ 28, 166.) It is thus clear from the pleadings that the PSPCA took physical custody of the dogs as a result of the April 10, 2010 seizure. (*Id.* ¶ 166; s*ee Sixth Angel I*, 2010 WL 2164521, at *1, 5 (noting PSPCA's "continued possession" of Sixth Angel's dogs and ordering their return from PSPCA custody).)

Though Sixth Angel alleges that the Dog Law Defendants and PSPCA conspired or otherwise acted in concert, it does not assert a distinct civil conspiracy claim. Sixth Angel thus offers no legal basis for holding Loughlin and West responsible for the acts of third-party PSPCA employees. The Court will therefore dismiss this claim. *See Barber v. Pa. Dep't of Agric.*, Civ. A. No. 09-1462, 2010 WL 1816760, at *6 (W.D. Pa. May 3, 2010) (dismissing Fourth Amendment claim against Dog Law Bureau defendants where "dogs where were seized were done so by authority of the PSPCA — not by the Bureau or its employees")

### b. State-law tort claims against Loughlin and West

Sixth Angel brings conversion and bailment claims against Loughlin and West in Counts X and XI of its Third Amended Complaint. These claims both arise from the seizure of Sixth Angel's dogs. (See Third Am. Compl. ¶¶ 214, 218, 222.) As the Court stated above, Loughlin and West did not seize Sixth Angel's dogs; the PSPCA did. (*See, e.g.*, Pl.'s Marcus Hook Resp. 21 n.10 (describing return of dogs from PSPCA).) A defendant's deprivation of a plaintiff's property is an

element of both conversion and bailment claims under Pennsylvania law. *See Lear Inc. v. Eddy,* 749 A.2d 971, 973-74 (Pa. Super. Ct. 2000) (describing elements of bailment); *Eisenhauer v. Clock Towers Assocs.*, 582 A.2d 33, 36 (Pa. Super. Ct. 1990) (describing elements of conversion). Because Loughlin and West did not take Sixth Angel's dogs, the Court will dismiss Sixth Angel's claims against them for conversion and bailment.

### 2. *First Amendment expressive association claims against all defendants*

The First Amendment protects expressive association, which the Supreme Court has defined as the "right to associate for the purpose of engaging in those activities protected by the First Amendment." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984); *see also Wine and Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 50 (1st Cir. 2005). This claim is apparently based in part on Sixth Angel's contention that sections of the Pennsylvania Dog Law are unconstitutional. (Pl.'s Dog Law Resp. 13-14.) The law of the case bars this claim. *See Sixth Angel I*, 2011 WL 605697, at *7-9.

In addition, the Court discerns a First Amendment retaliation claim. (*Id.* at 16.) A First Amendment retaliation claim requires a plaintiff to show that: (1) the Constitution protected his conduct; and (2) the protected activity was a substantial or motivating factor in the alleged retaliatory action. *See Baldassare v. New Jersey*, 250 F.3d 188, 194-95 (3d Cir. 2001). Assuming Sixth Angel could satisfy the first prong of this standard, it cannot show causation.

A defendant's personal animus toward a plaintiff is not enough to make out the unconstitutional retaliatory animus required to support a First Amendment retaliation claim. *Park v. Veasie*, 720 F. Supp. 2d 658, 669-70 (M.D. Pa. 2010); *see also Ryan v. Ill. Dep't of Children & Family Servs.*, 963 F. Supp. 1490, 1518 (C.D. Ill. 1997), *rev'd on other grounds*, 185 F.3d 751 (7th

Cir. 1999).  The protected conduct Sixth Angel identifies is its commitment to non-profit dog rescue. (See Pl.'s Marcus Hook Resp. 13-14.)  Sixth Angel's Third Amended Complaint does not allege that any Defendant targeted Sixth Angel because of its dog rescue philosophy or activities.  On the contrary, Sixth Angel claims the Dog Law Defendants "continue to date to enforce Defendant West's stated beliefs as in [her e-mail]."  (Third Am. Compl. ¶ 46.)

Sixth Angel provides this email with its Third Amended Complaint.  West's comments indicate that the Dog Law Bureau and its employees "have nothing against rescues, and are happy to see people helping dogs."  (West e-mail.)  Having described the poor conditions in which Sixth Angel's dogs traveled aboard Wessel's van, West concludes: "But there is a right and a wrong way to do things.  We are required to enforce the dog law.  If dogs are not housed correctly, that is bad for a dog regardless of whether the person is a rescue or a commercial kennel."  (*Id.*)  These comments offer no support for Sixth Angel's First Amendment retaliation claim against the Dog Law Defendants.  *Cf. Kougher v. Burd*, 274 F. App'x 197, 200 (3d Cir. 2008) (affirming summary judgment dismissing dog rescue organization's First Amendment retaliation claims against state officials as "either de minimis or too vague" to proceed to trial).

Sixth Angel's allegations as to the Marcus Hook Defendants also fail to link any Defendant's conduct to any protected First Amendment activity.  The Marcus Hook Defendants have nothing against dogs, according to Sixth Angel; other local residents walk their dogs (or allow them to run free) with impunity.  (*Id.* ¶¶ 93, 95.)  Nor does Sixth Angel claim the Marcus Hook Defendants seek to force all fostered dogs out of town; indeed, Mayor Schiliro allegedly "told other multiple dog households he would only cite if the extra dogs belonged to Plaintiff."  (*Id.* ¶ 104.)  If true, these allegations demonstrate inappropriate conduct by a local official.  They cannot, however, serve as

the basis of a First Amendment retaliation claim based on advocating for and rescuing dogs.

### 3. Zoning-related claims against the Marcus Hook Defendants

Sixth Angel's zoning claims stem from a "cease and desist" letter directing the organization to cease operating a "dog intake facility" at its office address. (*Id*. ¶¶ 109, 131.) Sixth Angel invokes the Fourth and Fourteenth Amendments to bring claims against the Marcus Hook Defendants based on this zoning dispute. Sixth Angel does not, however, explain which conduct gives rise to which claims. Upon review of the Third Amended Complaint, the Court concludes that Sixth Angel's allegations describe a claim for its loss of the use of its property under the Fourth Amendment and claims attacking the Marcus Hook Zoning Hearing Board's proceedings under the Fourteenth Amendment. (*See id*. ¶ 183.)

### a. Fourth Amendment claim against Marcus Hook

To the extent Sixth Angel alleges the zoning decision amounted to a "seizure" of its property, the Court will dismiss this claim. Sixth Angel alleges that the Marcus Hook Defendants' interference with its office's zoning status constitutes a violation of the Fourth Amendment. (*Id*. ¶¶ 167, 182, 184.) The "seizure" at issue allegedly implicates Sixth Angel's "right to utilize the office spaces it has rented and to operate in said location free of governmental arbitrariness." (*Id*. ¶ 182.)

At bottom, this is a dispute about whether Sixth Angel is subject to a local ordinance limiting the number of dogs the organization may keep on its property notwithstanding its status as a licensed kennel. (*Id*. ¶¶ 106-07.) There is no suggestion that Sixth Angel no longer occupies or uses its office. Indeed, Sixth Angel clarifies that it is not bringing a facial attack, as the local zoning code does not bar the organization from operating. (*Id*. ¶ 112.) While courts have applied the Fourth Amendment in land use cases, they have rejected Fourth Amendment seizure claims even in cases

where a plaintiff's commercial property was demolished without a warrant. *See Cross v. Mokwa*, 547 F.3d 890, 900 (8th Cir. 2008) (citing *Freeman v. City of Dallas*, 242 F.3d 642, 654 (5th Cir. 2001)) (additional citation omitted). The Court will therefore dismiss Sixth Angel's Fourth Amendment seizure claim against the Marcus Hook Defendants.

### b. Procedural due process

Procedural due process requires that citizens receive "the opportunity to be heard at a meaningful time and in a meaningful manner" when they are impacted by government action. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). To make out a procedural due process claim, Sixth Angel must show that a defendant deprived it of a protected property interest and that the state procedure for challenging the deprivation was constitutionally inadequate. *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). Sixth Angel fails to allege a plausible procedural due process claim because its own allegations establish that it received sufficient process.

A "state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body." *Perano v. Twp. of Tilden*, App. A. No. 10-2393, 2011 WL 1388381, at *2 (3d Cir. Apr. 13, 2011) (citing *DeBlasio v. Zoning Bd. of Adjustment for Twp. of West Amwell*, 53 F.3d 592, 597 (3d Cir. 1995)). Pennsylvania's scheme for judicial review of administrative land use decisions has previously passed constitutional muster. *Id.* (citing *Bello v. Walker*, 840 F.2d 1124, 1128 (3d Cir. 1988)). Sixth Angel is currently pursuing its appeal of the Marcus Hook Zoning Hearing Board's decision through Pennsylvania's court system. (*Id.* ¶ 144; *see also* Pl.'s Marcus Hook Resp. 11 n.8, 28.)

Sixth Angel alleges Marcus Hook violated state law by refusing to repeatedly reschedule the Marcus Hook Zoning Hearing Board's hearing in this matter to accommodate its counsel's schedule.

(Third. Am. Compl. ¶¶ 133-38.) Sixth Angel claims it was denied its right to counsel and to present evidence at the hearing because its counsel could not attend. The Pennsylvania Municipalities Planning Code provides that parties "shall have the right to be represented by counsel and shall be afforded the opportunity to respond and present evidence and argument and cross-examine adverse witnesses on all relevant issues." 53 Pa. Cons. Stat. § 10908(5). Sixth Angel had this opportunity on three separate occasions. (Third Am. Compl. ¶¶ 133-41.) Its own decision not to attend the hearing due to Silva's scheduling conflicts does not support a plausible allegation that Marcus Hook violated Pennsylvania law.

### c.    Substantive due process

A plaintiff must establish: (1) a property interest protected by due process; and (2) that the government's deprivation of that property interest "shocks the conscience" to prevail on a substantive due process claim arising from a land use decision. *Wessie Corp. v. Sea Isle City Zoning Bd. of Adjustment*, Civ. A. No. 06-589, 2007 1892473, at *3 (D.N.J. June 29, 2007). A finding that official behavior is conscience-shocking "encompasses only the most egregious official conduct." *Id*. at *4. Allegedly uneven application of local zoning codes and hostile relationships between property owners and zoning officials generally do not rise to the level of constitutional violations; rather, they are "examples of the kind of disagreement that is frequent in planning disputes." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004); *see also Perano*, 2011 WL 1388381, at *3.

Here, Sixth Angel contends "holding the hearing in the absence of Sixth Angel and on a date when counsel was otherwise obligated to be at other hearings was a denial of substantive due process." (*Id*. ¶ 145.) Sixth Angel's own decision to forego participation in a zoning hearing does

not constitute conscience-shocking conduct by the Marcus Hook Defendants. The Court will therefore dismiss Sixth Angel's substantive due process claim.

### 4. *Other Fourth Amendment claims against all Defendants*

Sixth Angel brings a Fourth Amendment abuse of process claim against all defendants in Count IX of its Third Amended Complaint. Plaintiffs must show a Fourth Amendment violation in addition to the common law elements of abuse of process to state a plausible § 1983 abuse of process claim. *Krankowski v. O'Neil*, Civ. A. No. 08-1595, 2010 WL 1329033, at *6 n.13 (M.D. Pa. Mar. 26, 2010) (citing *Litzenberger v. Vanim*, Civ. A. No. 01-5454, 2002 WL 1759370, at *3 (E.D. Pa. July 31, 2002)). Pennsylvania-law abuse of process claims require plaintiffs to show that a defendant: (1) used a legal process against a plaintiff; (2) primarily to accomplish a purpose for which the process was not designed; and (3) that a plaintiff suffered damages. *O'Hara v. Hanley*, Civ. A. No. 08-1393, 2009 WL 2043490, at *11 (W.D. Pa. July 8, 2009) (citing *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. Ct. 1998)).

The allegations underlying these claims describe harm suffered by Silva and other individual Sixth Angel members. (Third Am. Compl. ¶¶ 210-12.) In particular, Sixth Angel's mention of a loss of tenants in a "related business" appears to reference Silva's rental properties. To the extent Sixth Angel refers to citations Defendants issued to parties other than the organization itself, it lacks associational or third party standing to pursue this claim for the reasons discussed above. Sixth Angel's allegations grounded in legal processes commenced against third parties also fail to satisfy an element of Pennsylvania-law abuse of process claims, as such actions were not initiated against Sixth Angel — the sole remaining Plaintiff in this case.

Assuming Sixth Angel is alleging that the organization itself suffered the injuries alleged in

Count IX, Sixth Angel's claims will be dismissed because it has not linked its abuse of process theory to a viable Fourth Amendment claim. The only Fourth Amendment allegation Sixth Angel states on its own behalf against Loughlin and West concerns the seizure of its dogs. The Court has already dismissed this claim.

With respect to the Marcus Hook Defendants, Sixth Angel's allegations in Count IX do not describe a Fourth Amendment violation. Sixth Angel references civil and criminal proceedings, investigations, and citations. The issuance of a citation does not constitute a Fourth Amendment seizure. *Tomlinson v. Borough of Norristown*, Civ. A. No. 09-3711, 2011 WL 1539728, at *3-4 (E.D. Pa. Apr. 21, 2011) (citing *Crock v. Pennsylvania*, 397 F. App'x 747, 750 (3d Cir. 2010) *and Kartorie v. Dunham*, 108 F. App'x 694, 700 (3d Cir. 2004)). Sixth Angel has alleged no further deprivation of liberty on this front with respect to the Marcus Hook Defendants.

Sixth Angel has not linked its Fourth Amendment abuse of process claim to a constitutional injury caused by Loughlin, West, or the Marcus Hook Defendants. The Court will therefore dismiss this claim for failure to identify a Fourth Amendment violation sufficient to sustain Count IX's § 1983 abuse of process claim. *See Golya v. Golya*, Civ. A. No. 05-100, 2007 WL 2301085, at *7 (M.D. Pa. Aug. 9, 2007).

## IV.    CONCLUSION

The Court does not have jurisdiction over many of Sixth Angel's claims due to the Dog Law Defendant's Eleventh Amendment immunity. Sixth Angel's lack of standing also requires dismissal of the bulk of its Third Amended Complaint. Sixth Angel's repeated noncompliance with Rule 8 triggers dismissal of further claims which may be extrapolated from its pleading,

including possible defamation, conspiracy, and equal protection theories.  Finally, substantive deficiencies in Sixth Angel's remaining claims warrant granting Defendants' motions to dismiss on these points.  An Order consistent with this Memorandum will be docketed separately.